Filed 11/20/23  In re Q.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Q.C. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.C. et al.,<br><br>Defendants and Appellants. | F086362<br><br>(Super. Ct. Nos. JVDP-22-000028, JVDP-22-000029)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant L.N.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant A.C.

Thomas E. Boze, County Counsel, and Sophia Ahmad, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Detjen, Acting P. J., Peña, J. and Meehan, J.

# INTRODUCTION

L.N. (mother) and A.C. (father) are the parents of sons Q.C. (born May 2019) and Z.C. (born April 2021) (collectively, the children). Mother and father (collectively, appellants) appeal from the juvenile court's order terminating their parental rights pursuant to Welfare and Institutions Code section 366.26.[1] They contend the Stanislaus County Community Services Agency (agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because (1) not all extended family members were inquired of, (2) further inquiry was not conducted after father gave reason to believe the children could be Indian children, and (3) the agency's attempts to contact some of the extended family members were inadequate.[2] The agency disagrees.

However, consistent with our decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the error[s are] prejudicial because neither the agency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.)

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

**Petition and Detention**

On February 16, 2022, the agency filed a petition on behalf of the children pursuant to section 300, subdivisions (b)(1) and (g). The petition contained an Indian Child Inquiry Attachment (ICWA-010(A)) form for each child stating mother gave no reason to believe the children were or could be Indian children. Additionally, mother had filled out Parental Notification of Indian Status (ICWA-020) forms for each child denying Indian ancestry.

The detention report stated ICWA did not apply. Mother had denied having Indian ancestry, but the agency had been unable to conduct an inquiry with father, who was incarcerated. The agency stated it would make ongoing inquiries with father. The detention report further stated the agency had been in contact with maternal great-grandmother C.H. and maternal relative T.S. for placement purposes.

On February 22, 2022, the juvenile court held a detention hearing in which both mother and father appeared. The court conducted ICWA inquiries. Mother again denied having Indian ancestry. Father stated he believed he had Indian ancestry through paternal grandmother's side of the family. The juvenile court found ICWA could apply and ordered the agency to conduct a further inquiry. Additionally, it found a prima facie case had been established and ordered the children detained.

**Jurisdiction and Disposition**

The jurisdiction and disposition report indicated that after the detention hearing, a social worker asked father about his Indian ancestry. Father was not aware of ancestry through a specific tribe, but stated there could be Indian ancestry in his family because they had "high cheekbones." The report stated it did not appear father had Indian

---

**3** Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

ancestry.  The report further indicated the agency had been in contact with several relatives for placement purposes, including paternal cousin C.H., maternal great-uncle K.D., paternal sibling G.L., maternal great-aunt S.P., family friend T.S., and paternal grandfather T.C.

On April 20, 2022, the juvenile court held a combined jurisdiction and disposition hearing.  The court found ICWA did not apply.  The court found the allegations in the petition true, ordered the children removed from parental custody, and ordered mother and father participate in reunification services.

**Six-Month Status Review**

The six-month status review report stated ICWA did not apply as the juvenile court had found it inapplicable at the combined jurisdiction and disposition hearing.  An addendum report reiterated the same information.

On November 10, 2022, the juvenile court held a six-month status review hearing and adopted the agency's recommendation to terminate reunification services and set a section 366.26 hearing.  The court again found ICWA inapplicable.

**Section 366.26**

The section 366.26 report reiterated the prior ICWA information and detailed attempts to gather further information.  In February 2023, a few months before the section 366.26 hearing, the social worker attempted "multiple telephone contacts" with father to ask about his possible Indian ancestry.  The social worker left a voice message describing the purpose of the phone call and asked for a call back.  The social worker also attempted telephone contact with paternal sibling K.C., paternal great-uncle L.A., paternal great-aunt A.L., maternal grandmother E.F., maternal grandfather G.N., and maternal great-grandfather G.N., but was unsuccessful.  The social worker left voicemails requesting call backs.  The social worker successfully made contact with paternal sibling G.L. who denied having Indian ancestry or having further knowledge about the family's possible ancestry.

4.

On May 23, 2023, the juvenile court held a section 366.26 hearing where it found there was no reason to believe ICWA applied and terminated parental rights.

Mother and father timely appealed.

## DISCUSSION

### I. ICWA

#### A. Legal Principles

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th 566, 594, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 138, fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective

September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

### 1.    Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the agency nor the court plays any role in making that determination.  [Citations.]  ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' "  (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' "  (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.)  California law imposes "an affirmative and continuing duty [on the court and the county welfare agency] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  (§ 224.2, subd. (a).)  "If a child is placed into the temporary custody of a county welfare [agency] pursuant to [s]ection 306 … the county welfare [agency] … has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)  Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.  The court shall instruct the parties to inform the

court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

County welfare agencies "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received,

that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[4]

### B. Analysis

#### 1. Summary of ICWA Inquiry and Notice

In the present case, mother denied having Indian ancestry when the agency and the juvenile court inquired of her. The agency also filed ICWA-020 forms denying the same on mother's behalf. We note, mother was incarcerated at that time and the ICWA-020 forms were signed by the social worker, not by mother. As for father, at his first appearance in court, he said he believed there was some Indian ancestry through paternal grandmother's side of the family. As a result, the court ordered the agency to conduct a further inquiry. Thereafter, the agency contacted father about his claim of Indian ancestry, but he could not specify a tribe. He said there could be Indian ancestry in his family because they had "high cheekbones." The record does not reflect the agency ever contacted the Bureau of Indian Affairs to help identify a tribe. Additionally, although the agency eventually attempted to contact several maternal and paternal family members to ask about the family's possible Indian ancestry,[5] the record shows there were several other extended family members it did not inquire of, including maternal great-grandmother C.H., maternal relative T.S., paternal cousin C.H., maternal great-uncle K.D., maternal great-aunt S.P., family friend T.S., and paternal grandfather T.C. Nevertheless, the court found ICWA did not apply.

---

[4] All further references to rules are to the California Rules of Court.

[5] The extended family members the agency attempted to conduct inquiries with included paternal sibling K.C., paternal great-uncle L.A., paternal great-aunt A.L., maternal grandmother E.F., maternal grandfather G.N., and maternal great-great-grandfather G.N. The agency did, however, successfully conduct an inquiry with paternal sibling G.L. who denied having Indian ancestry or having knowledge of the family's ancestry.

8.

Father contends the agency's failure to inquire of all extended family members it was in contact with and the failure to conduct a further inquiry resulted in prejudicial error. Mother further asserts that the agency's "perfunctory attempt" to contact the relatives it did try to call, was insufficient. She asserts the agency should have called a second or third time, or sent letters. The agency disagrees with the parents and asserts there was no reason to believe the children were or could be Indian children.

In *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 152.) Applying the standards we articulated in *K.H.* and *E.C.*, as we discuss below, we conclude the agency's errors were prejudicial and remand for the agency to conduct a proper, adequate, and duly diligent inquiry is necessary.

### 2. Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, at p. 143.) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.]  The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." '  [Citations.]  The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation].  '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.)  Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion.  (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.]  But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court[.]" ' " [Citations.]  [¶]  While each standard here fits a distinct type of

10.

determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### 3. The Agency and Juvenile Court Erred

As previously mentioned, when "a child is placed into the temporary custody of a county welfare [agency] …, the county welfare [agency] … has a duty to inquire whether [the] child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, *extended family members*, *others who have an interest in the child*, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b), italics added.) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) Here, the agency conducted inquiries only with mother, father, and paternal sibling G.L., which fell short of complying with the plain language of section 224.2, subdivision (b). Section 224.2, subdivision (b), required the agency to inquire of the additional extended family members it was in contact with and any other party who could have had an interest in the children. There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) "On a well-developed record, the court has relatively broad discretion [in such cases] to determine [that] the agency's inquiry was proper, adequate, and duly diligent on the

11.

specific facts of the case." (*K.H.*, at p. 589; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 157.) While the agency did attempt to contact some extended family members, there were others it could have inquired of as well.

Additionally, if the court or social worker "has *reason to believe* that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court[ or] social worker … shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e), italics added.) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court[ or] social worker … has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, *but is not limited to*, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d). (§ 224.2, subd. (e)(1), italics added.) In the present case, there was reason to believe the children could be Indian children because father stated he believed he had ancestry through paternal grandmother's side of the family. Father could not identify a tribe; therefore, it was the agency's duty to contact the Bureau of Indian Affairs for assistance. "When there is reason to believe the child is an Indian child, further inquiry is necessary to help the court[ or] social worker … determine whether there is reason to know a child is an Indian child. Further inquiry includes, but is not limited to … [¶] … [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility." (§ 224.2, subd. (e)(2)(B).)

Thus, we conclude the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)[6]

### 4. Prejudice

"Where, as here, the deficiency lies with the agency's duty of […] inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 151.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

---

**6**      Mother also argues that the agency committed error because the social worker signed the ICWA-020 form on her behalf. The signature lines read, "Social Worker Carmen Hernandez for [L.N.]." Mother provides no authority in support of her proposition, and we know of none. Moreover, mother expressly confirmed the accuracy of the ICWA-020 form in court; therefore, any error would be rendered harmless.

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[7] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id*. at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 608; accord, *E.C.*, at pp. 152–153.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, at p. 608; accord, *E.C.*, at p. 153.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the agency, or the juvenile court. (*K.H.*, at p. 590; accord, *E.C.*, at pp. 139–140.) "[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, at p. 155.)

---

7       *People v. Watson* (1956) 46 Cal.2d 818, 836.

Here, the agency's inquiry, " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 156, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. 155, quoting *K.H.*, at p. 611.)  Therefore, the error is prejudicial and reversal is required.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded.  The court is instructed to ensure the agency conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.)  " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [the children]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [agency].  So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding.  (§ 224.2, subd. (i)(2).)' " (*E.C.*, at p. 157, quoting *K.H.*, at p. 621.)[8]

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to

---

[8]    Mother asks this court to set forth standards governing the efforts that must be made when conducting inquiries, but as mentioned in *K.H.*, we leave that determination to the juvenile court who is better positioned to evaluate the evidence on a case-by-case basis.  (*K.H.*, *supra*, 84 Cal.App.5th at p. 621.)

comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). The juvenile court is directed to comply with the inquiry provisions of section 224.2, subdivision (c). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the juvenile court's order is affirmed.